26-409(L)-cv
*Steele-Warrick v. Bedard*

# United States Court of Appeals
## for the Second Circuit

---

August Term 2026
Argued: October 20, 2026
Decided: November 16, 2026

Nos. 26-409(L), 26-410(Con), 26-412(Con), 26-414(Con)

---

NADEZDA STEELE-WARRICK, DARRYL SCHULTZ, individually and on behalf of all others similarly situated,
*Plaintiffs-Appellees*,

— v. —

COREY BEDARD, CHARLES KELLY, RICHARD FINNEGAN, ANTHONY ANNUCCI, JAMES O'GORMAN,
*Defendants-Cross-Defendants-Cross-Claimants-Appellants*,
MICROGENICS CORPORATION, THERMOS FISHER SCIENTIFIC, INC.,
*Defendants-Cross-Defendants-Cross-Claimants*,
DONALD VENETTOZZI, ANTHONY RODRIGUEZ, JENNIFER BOOTH,
*Defendants*.

---

Appeal from the United States District Court
for the Eastern District of New York
No. 1:19-CV-6558, Frederic Block, *Judge*

---

Before: CABRANES, PARKER, and KAHN, *Circuit Judges*.

Appellees, former and currently incarcerated individuals, allege that Appellants, New York prison employees, disciplined prisoners for positive results, generated by a new drug testing protocol despite the new system's high false-positive rate. This discipline, Appellees allege, violated substantiative due process. Appellants moved for summary judgment on the basis of qualified immunity, which the District Court denied**.** We reverse.

---

FOR PLAINTIFFS-APPELLEES: MATTHEW D. BRINCKERHOFF (Samuel Shapiro, Emily K. Wanger, Eric Abrams, Adam Nasser, *on the brief*) Emery Celli Brinckerhoff Abady Ward & Maazel LLP, New York, NY, *and* Karen L. Murtagh, David Bentivegna, Jonathan Feldman, Ann Ferrari, Andrew Stecker, Prisoner's Legal Services of New York, Albany, NY.

FOR DEFENDANT-APPELLANT BEDARD: LAUREN N. MORDACQ (Ryan T. Donovan, *on the brief*) Conway, Donovan & Manley, PLLC, Albany, NY

FOR DEFENDANT-APPELLANT KELLY: JEFFREY P. MANS, Law Office of Jeffrey P. Mans, Albany, NY.

FOR DEFENDANT-APPELLANT FINNEGAN: ALLEE VON STACKELBERG (BENJAMIN W. HILL, *on the brief*), CAPEZZA HILL, LLP, ALBANY, NY.

FOR DEFENDANTS-APPELLANTS ANNUCCI AND O'GORMAN: ESTER MURDUKHAYEVA (Barbara D. Underwood and Danny Yao Li, *on the brief*), *for* Letitia James, Attorney General for the State of New York, New York, NY.

BARRINGTON D. PARKER, *Circuit Judge*:

This appeal arises from a decision of the District Court denying Appellants' motions for summary judgment based on qualified immunity. In a putative class action, Appellees, former and currently incarcerated individuals under the jurisdiction of the New York Department of Corrections and Community Supervision ("DOCCS"), alleged that Appellants, DOCCS officials, arbitrarily disciplined prisoners for false positive results, generated by a new drug testing protocol despite the new system's high false-positive rate. This discipline, prisoners allege, violated substantiative due process. We disagree.

**STANDARD OF REVIEW**

"We review a district court's denial of a motion for summary judgment sounding in qualified immunity *de novo* and draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." *Clark v. Valletta*, 157 F.4th 201, 208 (2d Cir. 2025) (citation modified). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at

the time of the challenged conduct." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

**BACKGROUND**

This suit centers around the drug testing system that DOCCS used to conduct urinalysis testing on prisoners. From 1987 until 2018, DOCCS officials conducted drug testing using enzyme multiple immunoassay technique technology ("EMIT") and required that urine samples be tested twice and produce two positive results before initiating misbehavior proceedings. Around 2016, DOCCS officials decided to change vendors. Appellant Corey Bedard led this effort and was contacted by a representative of Microgenics Corporation to consider using their Indiko Plus immunoassays as an alternative. Indiko Plus used a different assay technology than EMIT, but Bedard was assured that this alternative would not adversely impact the accuracy of the results.

Bedard investigated Microgenics and, in 2017 and 2018, conducted a side-by-side comparison of the EMIT test with the Indiko Plus test. This comparison involved 400 tested samples and the results indicated that the new tests were as reliable as the old tests, except in one way. In the comparison testing, Microgenics used an assay called "BUP I" that produced more false positives. Microgenics

assured Bedard that this issue would be resolved and that the improved assay test would not produce false positives. Bedard allegedly never followed up to determine if these assurances were true but ultimately recommended the new tests to his superiors.

DOCCS introduced the new tests in January 2019 and immediately began to receive numerous complaints that the tests were generating false positive results. Appellant Anthony Annucci (Acting Commissioner of DOCCS) received these complaints and forwarded them to Appellants James O'Gorman (Deputy Commissioner for Facility Operations), Richard Finnegan (Director of the Office of Special Housing), and Charles Kelly (Assistant Commissioner of Special Housing). By June 2019, DOCCS officials began investigating these complaints and by August 2019, Kelly learned that the new test's "BUP II" assay was producing significant false positive results. By August 19, 2019, Annucci suspended all discipline based on the BUP II assay and expunged all disciplinary determinations based upon the tests. In September 2019, DOCCS referred the problem surrounding the new BUP II test to the New York State Inspector General's office for review. That office ultimately recommended that DOCCS stop imposing discipline based on positive results from the new tests unless they were

confirmed by an independent laboratory. DOCCS complied and by January 2020, it reversed and expunged the discipline resulting from the new tests and stopped using it altogether. Eventually, the prisoners who were disciplined commenced this action alleging violations of their Eighth and Fourteenth Amendment rights because DOCCS officials failed to take corrective action after becoming aware that the new tests were unreliable.

This is the second time this case is before us. Previously, the District Court allowed discovery to proceed against the DOCCS officials before it ruled on their motions to dismiss on the basis of qualified immunity. *See Steele-Warrick v. Finnegan*, No. 1:19-CV-6558-FB-VMS, 2024 WL 2837618, at *1 (2d Cir. June 5, 2024). Although the District Court eventually dismissed the prisoners' Eighth Amendment claims, it permitted their Fourteenth Amendment substantive due process claims to proceed, prompting the DOCCS officials to file an interlocutory appeal challenging the District Court's refusal to dismiss the claims. *Id.* Because discovery was almost complete and the case involved "complex factual questions, apparently intertwined with the legal ones," we determined that it would be best for these issues to be resolved on summary judgment. *Id.* Once the matter returned to the District Court, DOCCS officials again sought qualified immunity,

and once again, the District Court denied them immunity. The DOCCS officials appealed to us again. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (holding that the denial of qualified immunity that turns on an issue of law is immediately appealable).

## DISCUSSION

The DOCCS officials argue that they are entitled to qualified immunity because the right to be free from punishment inflicted as a result of faulty drug tests was not clearly established and no reasonable juror could conclude that the officials' conduct violated substantive due process. We agree for two reasons.

### I. Clearly Established Right

First, the right in question was not clearly established at the time the conduct at issue occurred. The District Court defined that right as "the longstanding principle that the Substantive Due Process Clause prohibits arbitrary punishment," and concluded that the right was clearly established based on its reading of *Chapman v. United States*, 500 U.S. 453 (1991); *Southerland v. City of New York*, 680 F.3d 127 (2d Cir. 2012); *Foucha v. Louisiana*, 504 U.S. 71 (1992); and *Hurd v. Fredenburgh*, 984 F.3d 1075 (2d Cir. 2021). *See Steele-Warrick v. Microgenics Corp.*,

671 F. Supp. 3d 229, 246–47 (E.D.N.Y. 2023); *see also* Special App'x at 10.[1] We disagree and conclude that these cases do not establish a right to be free from the conduct in question here for two reasons. First, the right the District Court adduced from the cases it relied on is defined at an impermissibly general level. Substantive Due Process challenges require "a careful description of the asserted fundamental liberty interest . . .[,] [and] vague generalities . . . will not suffice." *Chavez v. Martinez*, 538 U.S. 760, 775–76 (2003) (citation modified). Specifically, we have "repeatedly" been reminded by the Supreme Court not to define clearly established law "at a high a level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *see also Ashcroft*, 563 U.S. at 742. The prisoners' purported right to be free from arbitrary punishment identified by the District Court is even more general than other legal rules that the Supreme Court has rejected as too general for qualified immunity purposes. *See, e.g.*, *Mullenix*, 577 U.S. at 12–16 (rejecting "the . . . rule that a police officer may not use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others" as too general); *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987) (rejecting "the right to be free

[1] The District Court defined the constitutional right when it ruled on Appellants' motion to dismiss under Rule 12(b)(6). *See generally*, *Steele-Warrick v. Microgenics Corp.*, 671 F. Supp. 3d 229, 247 (E.D.N.Y. 2023). The District Court incorporated that reasoning into its summary judgment order, thus we analyze the cases it relied on at the Rule 12(b)(6) phase to determine if the law was clearly established.

from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances" as too general).

Additionally, we have been clear that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hurd*, 984 F.3d at 1089 (citation modified). "In short, officers receive qualified immunity unless they could have read the relevant precedent beforehand and known that it proscribed their specific conduct." *Zorn v. Linton*, 607 U.S. 568, 572 (2026) (citation modified). If DOCCS officials read the cases cited by the District Court and prisoners, DOCCS officials would not be on notice that their conduct—implementing and relying on drug tests they later realized produced false positives at a high right—violated clearly established constitutional law. Because the right in question was not clearly established, the DOCCS officials are entitled to qualified immunity.

## II. Violation of Constitutional Right

Secondly, when considering a substantive due process claim, after identifying the constitutional right at stake, a plaintiff "must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hurd*, 984 F.3d at 1087 (citation modified). According

to the Supreme Court, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level," but "negligently inflicted harm" does not violate substantive due process. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848–49 (1998). Whether conduct "shock[s] the conscience" is a legal question we can decide at the summary judgment stage. *Matican v. City of New York*, 524 F.3d 151, 158–59 (2d Cir. 2008). On this record, we conclude that the DOCCS officials' actions, regrettable as they might have been, do not rise to a level that shocks the conscience. It is not disputed that DOCCS officials implemented a new drug testing regime which produced a high rate of false positives. But the record demonstrates that they were unaware of these deficiencies when they decided to replace the old testing procedures with the new one. *See* Special App'x at 5–8. True, over several months DOCCS officials punished incarcerated individuals when they tested positive. But even assuming that certain DOCCS officials became aware of complaints about the new tests shortly after they first implemented them, they began investigating the complaints. By August, DOCCS officials had reversed course and suspended and rescinded certain discipline based on the faulty testing and referred the matter to the New York Inspector

General's office for review. That office recommended DOCCS officials stop using the new test and they complied. Accordingly, by January 2020, DOCCS officials expunged and reversed discipline resulting from the new tests. *Id.* Thus, within the span of a year, they identified and corrected the issues with the new testing regime. The prisoners contend that the DOCCS officials should have realized that the tests were faulty from the beginning and that the decision to stop relying on the new tests took too long. Perhaps that is correct. But at most, this conduct was "negligently inflicted harm," but that harm does not rise to the level of a substantive due process violation. *Lewis*, 523 U.S. at 848–49. Therefore, the DOCCS officials are entitled to qualified immunity on this basis as well.

## CONCLUSION

For these reasons, we **REVERSE** the judgment of the District Court and remand the case with instructions to grant Appellants qualified immunity.